JOSEPH GUILD v. OHIO LODGE No. 132, I. O. O. F.

No. 248.

1. LEASE—*provision in, construed.* The following clause is in a lease: "Also demise, set over and lease to the same parties, as a part of said contract and for the same consideration, an entry and stairway on the west side of the said building situated as above described; the said entry and stairway leading from the ground floor and street to said second story. The said entry and stairway to be of the width of four feet." *Held,* that the leased premises being on lot seven, the words "leading from the ground floor . . . to said second story," mean "from the ground floor" of such building, and that the words "situated as above described" refer to the stairway upon the leased premises. That

68     GUILD v. OHIO LODGE.

N. Dept.       Opinion.   McElroy, J.       6 Kan. App.

said clause in said lease does not in terms grant rights in lot eight.

2. CONTRACT—*recovery must be on, alleged in petition.* The plaintiff must recover upon the allegations of its petition; and the petition alleges no other basis of claim to the stairway in question then the written lease. No oral contract, agreement or right by prescription is alleged. The defendant in error says: "The defendant in error relies upon the contract as set out in its petition, for its right to an easement over the east four feet of lot eight, upon the stairway there erected, as a means of access to and from its lodge room and to and from Railroad Avenue." It cannot prevail upon another contract than the written lease. The lease does not in terms give any rights in and to lot eight. The leased premises are stated to be on lot seven, and under this lease its rights are confined to lot seven.

Error from Shawnee Circuit Court. Hon. J. B. Johnson, Judge. Opinion filed July 16, 1897. *Reversed.*

*Keeler, Welch & Wagener,* for plaintiff in error.

*G. A. Huron,* for defendant in error.

McELROY, J. This was an action begun by Ohio Lodge No. 132, I. O. O. F., against Guild to enjoin the taking down, destroying, or closing up a stairway on lot eight on Railroad Avenue in the city of Silver Lake, Kan. The case was tried by the court, without a jury, and the court found for the plaintiff.

There is little conflict of testimony in this case. On October 25, 1880, Johnson and Boswell were the joint owners of lots seven and eight on Railroad Avenue in the city of Silver Lake. Lot seven was on the corner of Railroad Avenue and Medora Street, and lot eight adjoined it on the west; both lots fronted on Railroad Avenue.

About this time, Johnson and Boswell erected the first story of a stone building upon lot seven, covering the entire front of the lot; and, in consideration of

the erection of the second story by the Lodge, they made to it a ninety-nine year lease of the second story, and of an entry and stairway thereto. The language of the lease is as follows :

"Also demise, set over and lease to the same parties, as a part of said contract and for the same consideration, an entry and stairway on the west side of the said building situated as above described ; the said entry and stairway leading from the ground floor and street to said second story. The said entry and stairway to be of the width of four feet."

This lease was not acknowledged, but it was delivered to the register of deeds, and was by him recorded on November 3, 1880. The Lodge shortly afterward constructed the second story and placed its stairway on the outside of the building, over and upon a portion of the adjoining lot eight, which up to that time was a vacant lot. After the construction of said building and stairway — on March 4, 1881 — Boswell by a quitclaim deed conveyed his interest in lots seven and eight to Richards, and on March 12, 1881, Richards and Johnson by quitclaim deed conveyed their interest in lots seven and eight to Frost. On February 23, 1882, Frost and wife by warranty deed conveyed lot seven, except the west half of the west wall of the building thereon, to Pratt, and afterward, in the spring of 1882, by warranty deed conveyed lot eight to Pratt. On May 23, 1883, Pratt and wife, by warranty deed, conveyed lot eight to Guild.

On May 29, 1891, Frost and wife by warranty deed conveyed to Guild the west half of the west wall of the building on lot seven. At the commencement of this action, the Lodge was the owner of lot seven and the building thereon.

The stairway erected by the Lodge commenced about twenty feet south of the street, and extended

70       GUILD v. OHIO LODGE.

N. Dept.       Opinion.   McElroy, J.       6 Kan. App.

upward and southward to a door through the wall of the second story near the south end of the building. At the top of the stairs was a wide landing extending upon lot eight.

The Lodge continued to use this stairway as a means of access to its lodge room until 1882, when Pratt erected a building on lot eight, covering the entire front of the lot and using the west wall of the building on lot seven as a party wall. In constructing this building, he took away the stairway erected by the Lodge, and in his building he put a stairway, on the side next to lot seven, commencing near the street and with a hallway extending from the top of the stairs, southward, beyond the door, into the second story of the building on lot seven. After the erection of Pratt's building, the Lodge used his stairs and hallway as a means of access to its lodge room, and has had no other way of access. It has sublet its lodge room to other societies, and all of them together have used the stairway and hall an average of two evenings in each week.

At the time of Guild's purchase of lot eight, he did not know that the Lodge used, or claimed the right to use, the stairway and hall in the building thereon. Up to the time of his purchase he resided in the East. While Guild was making an extended visit at his farm, he was induced to purchase lot eight. At the time of purchase, he says, he looked the building over on the outside and saw the inside of the lower story; about two months afterward he visited the building to collect rent, and then went upstairs and saw the doorway into the other building, and he was then told that the stairway was used as a means of access to the lodge room over lot seven. He did not learn that the Lodge claimed the right to use it, until the spring of

1889, when he was informed for the first time that the Lodge claimed the right to use the stairway under the lease set up in this action.

Some of the trustees of the Lodge testified that they understood Guild to state "that the time when he went upstairs and saw the door into the other building was before he purchased lot eight;" but both Guild and his son testify that "this visit to the upper story of the building took place afterward, when he went there to collect rent," and that Guild so stated to the trustees.

When Pratt erected the building on lot eight, the Lodge contributed towards the erection of the stairway under an arrangement that "he was to build that stairway, and finish and plaster the walls leading to the doorway, and was to give the Lodge the use of it."

The plaintiff in error relies upon the lease for its rights in the stairway on lot eight. The petition alleges no other basis of claim to the stairway in question than the written lease. No oral contract, agreement, or right by prescription is alleged. The original stairway is alleged to have been constructed by the Lodge "by the terms of said written lease," and the stairway "subsequently" erected in the building on lot eight, is alleged to have been constructed by Pratt "in accordance with the terms of said lease." The Lodge's possession or use of the present stairway is alleged to have been "for the purposes mentioned in said lease." The defendant in error, in its brief, says:

"The defendant in error relies upon the contract set out in its petition, for its right to an easement over the east four feet of lot eight, upon the stairway there erected, as a means of access to and from its lodge room and to and from Railroad Avenue."

72       GUILD v. OHIO LODGE.

N. Dept.       Opinion. McElroy, J.       6 Kan. App.

The Lodge cannot recover in this action unless the written lease gives it the rights it contends for. It cannot prevail upon another contract than the written lease. The lease does not in terms give any rights in and to lot eight. The leased premises are stated to be on lot seven, and lot eight is not mentioned. Even in describing the location of the entry and stairway, it adds, "situated as above described." If this refers to the building, and not to the entry and stairway, it is a senseless repetition. If the parties are given credit for using language with any purpose, they must have meant that the entry and stairway were to be situated on lot seven.

The stairway is described as a "stairway leading from the ground floor . . . to said second story." The only building, and consequently the only "ground floor" then contemplated, was on lot seven.

By the terms of the lease there was leased an "entry . . . leading from the street." According to Webster, an entry is "a passage leading into a house or other building or to a room ; a vestibule." A passage is defined as "a common avenue to various apartments in a building; a hall; a corridor." Under this lease, the Lodge was entitled to a covered and inclosed entry hall, or vestibule, upon lot seven for an entrance to the lodge room.

The written instrument was a lease of an entry and stairway, and not a mere easement over, or right to use and occupy, them with other occupants of the premises. By the terms of the lease, the Lodge's right to the exclusive use of the entry and stairway is as certain and absolute as its right to the exclusive use of the second story of the building on lot seven. Under the lease, the Lodge has the exclusive right to the entry and stairway on lot eight, or else has no right whatever on

GUILD v. OHIO LODGE. 73

July 16, 1897.    Opinion.   McElroy, J.    E. Div.

that lot.   It is unreasonable to presume that the parties to the lease intended, without saying so, to have it convey such an important interest in lot eight. Even if the written lease could be construed according to the Lodge's contention, the Lodge must fail in this action, because Guild was an innocent *bona fide* purchaser of lot eight, and had no notice of the existence of such lease.   It was not acknowledged, and hence the writing of it in the books of record by the register of deeds does not give notice to any one who does not actually see it.

In *Sanford v. Weeks* ( 38 Kan. 324 ), the court says : "As the written contract of December 8, 1879, was not acknowledged, its being filed for record did not impart notice, etc."

But the Lodge says, "the building was so constructed that Guild was bound to take notice."   We submit that Guild was not bound to inspect the building on lot seven to see if there was an inside or back stairway to the second floor of the building.   He was purchasing lot eight, and the building thereon.   He visited the first floor and saw that a stairway on lot eight led to the second floor.   There was apparently no occasion for further inquiry.   Even had he made the inspection the Lodge claims he ought to have made, he would not have discovered that the Lodge claimed the right to use his stairs and hallway by reason of the lease set up.   The lease does not in terms give any right in lot eight.   Whatever the fact was about the contract with Pratt, it could not now affect Guild's rights.   The law has provided the means by which an owner of an interest in real estate can give notice of his rights.   To allow such " arrangement" as the one now contended for by the Lodge to be successfully asserted against *"bona fide* purchasers without notice," would intro-

duce into real-estate transactions an unnecessary element of uncertainty, and would open the door to numberless contentions and fraud. No purchaser could know with certainty that he was getting what he paid for.

The judgment of the trial court is against the evidence. The court erred in overruling the motion for a new trial. The judgment is reversed, with direction to the trial court to sustain the motion for a new trial.